

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 20, 2014

**BY HAND AND ECF**

The Honorable Nelson S. Roman
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re: **United States v. Juan Medina, 14 Cr. 798 (NSR)**

Dear Judge Roman:

      The Government respectfully submits this letter in advance of the sentencing of defendant Juan Medina, which is scheduled for April 21, 2015, at 11:00 a.m. On January 7, 2015 Medina entered a guilty plea before the Honorable Lisa Margaret Smith, United States Magistrate Judge, to Count One of the above-referenced Information. Count One charges Medina with making false and fraudulent statements to federal agents, in violation of Title 18, United States Code, Section 1001(a). For the reasons that follow, the Government respectfully recommends that the Court find the applicable Guidelines range to be 18 to 24 months' imprisonment. The Government further recommends that the Court impose a sentence within the Guidelines range.

**A.**    **Offense Conduct**

      **1. The 911 Call**

      On August 29, 2014, at approximately 10:28 a.m., Medina placed a 911 call to emergency operators at the Hudson Valley Traffic Management Center in New York. Medina told operators that his former roommate ("Suspect-1") was planning to travel from Connecticut to New York to kill the President, who was visiting Westchester County that day, and that Suspect-1 would arrive in the New York area between 12:00 p.m. and 2:00 p.m. Medina provided operators with a New Haven, Connecticut address for Suspect-1 and gave them the description and license plate number of the vehicle that Suspect-1 was last seen driving. Medina said that Suspect-1 possessed two firearms, an AR-15 and an AK-47. During the emergency call, Medina identified himself as "Hassan," and refused to give a phone number or last name because he said he was afraid for his life.

Rev. 11.07.2014

Immediately following the 911 call, dozens of federal, state, and local law enforcement officers were dispatched to New York and Connecticut to locate Suspect-1. At approximately 2:40 p.m., the United States Secret Service/New York Electronic Crimes Task Force initiated wireless tracking on the cellphone number that Medina had provided to emergency operators. An alert was issued in Connecticut, White Plains, New York, and contiguous areas, informing law enforcement that the suspect was possibly armed and wanted for questioning by the Secret Service.

After nearly 12 hours of searching, law enforcement located Suspect-1 in Hamden, Connecticut at 10:40 p.m. on August 29, 2014. After searching his car and apartment and conducting an interview of Suspect-1, agents found no evidence supporting the allegations in the 911 call. During his interview, Suspect-1 suggested that an individual named Juan LNU, a close friend of Sarah Hubbard, disliked him and was responsible for the 911 call.

### 2. The False Statements

On September 1, 2014, Secret Service agents and Yonkers police officers located Medina at the home of Ms. Hubbard in Yonkers, New York. Medina denied calling 911. On September 3, 2014, Medina agreed to a voluntary interview with the Secret Service and the Yonkers police. During the interview, Medina again told the Secret Service agents that he did not make the 911 call and denied knowing who made the call. He provided agents with a written statement denying his involvement, and agreed to take a polygraph test administered by the Secret Service. The polygraph test results indicated that Medina was deceptive.

After Medina failed the polygraph test, he made an oral and written admission that he was responsible for the fake 911 call. Medina told the Secret Service that he made the call using a pre-paid "burner" cellphone, which he then sold to an unknown male. Medina admitted that he had never heard Suspect-1 discuss a plan to kill the President, and that he had never seen Suspect-1 in possession of automatic weapons. He admitted that he made the fake call because he wanted Suspect-1 to get in trouble.

**B.      Arrest and Plea**

On October 29, 2014, Medina was arrested on a Complaint charging violations of Title 18, United States Code, Section 1001(a). Medina was granted bail and has remained under supervision of Pretrial Services since his arrest. On January 7, 2015, Medina pleaded guilty to a one-count Information charging him with lying to the Secret Service on or about September 3, 2014, in violation of 18 U.S.C. § 1001(a). Medina's plea was entered pursuant to a *Pimentel* letter dated December 2, 2014, which calculated Medina's Sentencing Guidelines range to be 18 to 24 months' imprisonment.

**C.      The Applicable Sentencing Guidelines**

The appropriate calculation of Medina's Guidelines range is set forth in the Government's *Pimentel* letter and in Probation's Presentence Investigation Report ("PSR"), which specify a Guidelines offense level of 13, a Criminal History Category of III, and a

resulting Guidelines range of 18 to 24 months' imprisonment. The Guidelines offense level of 13 is calculated as follows:

- The guideline for 18 U.S.C. § 1001 offenses is found in U.S.S.G. § 2B1.1. However, pursuant to U.S.S.G. § 2B1.1(c)(3), because the offense conduct involved a fake emergency call, the applicable Guidelines provision is U.S.S.G. § 2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens). Pursuant to Sentencing Guideline § 2A6.1(a)(1), the base offense level is 12.

- Because the offense resulted in a substantial disruption of public, governmental, or business functions or services, a 4-level increase is applied under U.S.S.G. § 2A6.1(b)(4).

- Because Medina demonstrated an acceptance of responsibility through his allocution and subsequent conduct, a 2-level reduction is warranted pursuant to U.S.S.G. § 2E1.1(a). A further 1-level reduction is warranted pursuant to U.S.S.G. § 2E1.1(b) because Medina gave timely notice of his intent to enter a plea of guilty.

Medina argues in his April 16, 2015 sentencing submission that the 4-level increase pursuant to U.S.S.G. § 2A6.1(b)(4) is inappropriate. In the alternative, he argues that the Court should apply a 4-level reduction under U.S.S.G. § 2A6.1(b)(6) because the 911 call was not the result of deliberation. To the contrary, the underlying facts indicate that not only was the 911 call a deliberate, planned act, but it also led to a substantial disruption of governmental services. The 4-level enhancement is therefore applicable and appropriate here.

### 1. The Offense Resulted In Substantial Disruption of Government Services

As described in the PSR—and the underlying complaint—the defendant's fake emergency call caused a 12-hour manhunt involving federal authorities as well as Connecticut and New York law enforcement. Secret Service Special Agents from the Protective Intelligence Division traveled from New York City to Westchester County and Connecticut to help in the search along with another team of Special Agents based in Connecticut. In Connecticut, multiple New Haven and Hamden police patrol cars were dispatched looking for the suspected vehicle, and Connecticut State Police patrolled the highways and monitored traffic cameras. A "Be On the Look Out" ("BOLO") advisory was initiated across multiple municipalities and jurisdictions in New York and Connecticut. The search also included the engagement of a Secret Service cellphone tracking team. Once law enforcement identified and interviewed Medina on September 1, 2014, his false denial caused a multi-day investigation that finally concluded with a polygraph test and subsequent admission.

Courts have affirmed the application of the 4-level enhancement pursuant to U.S.S.G. § 2A6.1(b)(4) in cases in which the disruption was similar to or less than that caused by Medina. *See United States v. Anwar*, 741 F.3d 1134 (10th Cir. 2013) (false bomb threat caused substantial disruption where threat shut down college building and caused evacuation of 240 people and interruption of 14 classes); *United States v. Mohamed*, 459 F.3d 979 (9th Cir. 2006) ("ample evidence" for substantial disruption where false bomb threat caused engagement of multiple

federal and local law enforcement agencies and closing of shopping center); *United States* v. *Dudley*, 463 F.3d 1221 (11th Cir. 2006) (false anthrax threat to state judge caused two floors of courthouse to close for several hours and required judge to spend many hours discussing case with law enforcement). Much like the fake bomb threat in *Mohamed*, Medina's emergency call about a fake threat to the President caused a substantial disruption of law enforcement services, not to mention a significant expenditure of resources, as Secret Service personnel and local police were diverted from their normal investigative and patrol activities in response to the call. The Court should therefore apply the 4-level enhancement under U.S.S.G. § 2A6.1(b)(4).

### 2. The 4-Level Reduction for Lack of Deliberation Is Inapplicable

Medina also argues that he should receive a 4-level reduction pursuant to U.S.S.G. § 2A6.1(b)(6) because his emergency call lacked deliberation. By its explicit terms, section 2A6.1(b)(6) does not apply where there is a substantial disruption of governmental services pursuant to section 2A6.1(b)(4). *See* U.S.S.G. § 2A6.1(b)(6) ("If (A) subsection (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels.") As explained above, U.S.S.G. § 2A6.1(b)(4) is applicable here because Medina's offense involved a substantial disruption of government services. Therefore, the 4-level reduction is not applicable in this case.

Moreover, although Medina's offense involved a single hoax call, that call clearly involved deliberation. Medina's fake emergency call included the kind of details that not only made it credible, but would necessarily have involved pre-planning. For example, Medina gave the emergency operators the name of the suspect, his address, vehicle and license plate number, the specific weapons the suspect was alleged to be carrying, as well as the approximate timing for his arrival in Westchester. The call was made on the same day that the President was visiting Westchester. In addition, Medina used a pre-paid cellphone to make the call, and then got rid of it afterwards.

Such conduct is distinguishable from that in *United States* v. *Wright-Darrisaw*, 781 F.3d 35 (2d Cir. 2015), which the defendant cites. In *Wright-Darrisaw*, the defendant called the White House Comments Line "and after two and a half minutes of communication characterized generally as 'foul,' 'incoherent,' and 'irrational,' stated, 'I'm going to f**k and kill Obama.'" *Id.* at 37. In remanding the case for the district court to reconsider, the Second Circuit recognized "two factors that courts have considered in deciding whether to apply the 4-level reduction: (1) whether, and under what circumstances, the threat itself has been repeated and (2) whether there is evidence of planning or some effort to carry out the threat." *Id.* at 41. Here, the evidence indicates that Medina's detailed call to 911 must have required planning. Therefore, even under the guidance of *Wright-Darrisaw*, the 4-level reduction does not apply.

### D.     A Sentence Within the Guidelines Range Is Appropriate

A sentence within the advisory Guidelines range of 18 to 24 months' imprisonment is reasonable and appropriate in this case due to the nature and circumstances of the offense, the need to promote respect for the law, and the need for adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a). As described above, Medina's conduct caused significant disruption of

law enforcement activities. When finally confronted by the Secret Service, Medina lied to agents rather than face the consequences of his actions. This conduct suggests that a sentence within the Guidelines range is appropriate to promote respect for the law and provide adequate deterrence.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should impose a sentence on the defendant that is within the Guidelines range of 18 to 24 months' imprisonment.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____
Jessica K. Feinstein
Assistant United States Attorney
(914) 993-1904

Cc: Susanne Brody, Esq.

Rev. 11.07.2014